```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF NEW HAMPSHIRE


Benjamin Young
and Kathy Young

     v.                             Civil No.   11-cv-240-JL
                                    Opinion No. 2012 DNH 056
The Hartford Insurance
Company
```

**MEMORANDUM ORDER**

This is a dispute over the scope of liability coverage under a homeowners' insurance policy issued to plaintiffs Benjamin and Kathy Young by defendant The Hartford Insurance Company. In relevant part, the coverage applies only to claims arising out of the dwelling where the Youngs "reside," and does not apply to claims arising out of their "business." Based on these limitations, The Hartford denied coverage to the Youngs for a lawsuit against them by their tenant for personal injuries he allegedly suffered at the premises. The Youngs responded by filing suit against The Hartford in Rockingham Superior Court, seeking a declaratory judgment that the policy covered the claim. See N.H. Rev. Stat. Ann. § 491:22-a.

The Hartford removed the case here, see 28 U.S.C. § 1441(a), invoking this court's diversity jurisdiction, id. § 1332(a)(1), because The Hartford--appropriately enough--is located in Hartford, Connecticut, while the Youngs are not citizens of that

state, and the amount in controversy exceeds $75,000.[1]  The Hartford then answered and counterclaimed for a declaratory judgment that the policy's coverage did not extend to the tenant's lawsuit.  The parties have now cross-moved for summary judgment, see Fed. R. Civ. P. 56, based on undisputed facts set forth in a joint stipulation.  After hearing oral argument, the court grants The Hartford's motion for summary judgment, and denies the Youngs' motion for summary judgment.

The relevant stipulated facts are as follows.  The Youngs own the premises in question, a house in North Hampton, New Hampshire, and resided there between 1984 and 2007.  After purchasing a house in Wisconsin, however, the Youngs obtained drivers' licenses and voter registrations in that state in late 2007.  In the summer of 2007, they listed their house in New Hampton for sale, and started renting it out (though they "resided there for a substantial period of time in 2008").

---

[1] Challenging this conclusion, the Youngs moved to remand the case, see 28 U.S.C. § 1447(c), arguing that the amount in controversy did not exceed $75,000 because, in their tenant's lawsuit against them, the parties had stipulated to a pre-judgment attachment in the amount of $50,000.  Yet the Youngs acknowledged that "[t]here was certainly a possibility of recovery in excess of $75,000" in the tenant's suit.  Because it follows that the amount in controversy in this suit, seeking coverage against that one, exceeds $75,000, the court denied the motion to remand.  See Order of June 29, 2011.

In January 2009, they began renting the New Hampton house to another couple, Daniel Stanley and Lisa Gosling, initially on a one-year lease agreement and thereafter on a month-to-month basis. During the tenancy, which did not end until September 2010, the Youngs did not reside at the New Hampton house, but in Wisconsin, and they also spent time in North Carolina.

Coverage under the Youngs' homeowners' insurance policy with the Hartford ran from May 21, 2009 to May 21, 2010. In September 2010, Stanley filed suit against the Youngs in Rockingham County Superior Court, seeking recovery for personal injuries he allegedly suffered in an "incident involving a tree" on the premises on April 22, 2010. The Youngs notified The Hartford of the suit on October 10, 2010, seeking coverage under their homeowners' insurance policy. The Youngs returned to the New Hampton house that same month, after Stanley and Gosling left. The Hartford promptly denied the Youngs' claim.

The Hartford initially defended this decision on a number of grounds. Now, it raises only two, as noted at the outset. First, The Hartford argues that the Youngs did not "reside" at the premises at any time during the life of the policy, including when the alleged accident giving rise to Stanley's lawsuit occurred. Second, and independently, The Hartford argues that Stanley's lawsuit arises out of the Youngs' "business" in renting

3

the property to him. The court need not reach the second argument because the first argument is correct, and requires the entry of summary judgment in favor of The Hartford and against the Youngs.

The relevant liability insurance provisions of the Youngs' homeowners' policy state that The Hartford will defend and indemnify them against a claim "for damages because of 'bodily injury' or 'property damage' caused by an 'occurrence' to which the coverage applies" and "pay the necessary medical expenses that are incurred or medically ascertained within three years of an accident causing 'bodily injury.'" Specifically excluded from these coverages, however, are "'[b]odily injury' or 'property damage' arising out of a premises" owned, rented to, or rented to others by an insured "that is not an 'insured location.'" The policy defines the term "insured location," in relevant part, as "[t]he 'residence premises,'" defining that term, in turn (and again in relevant part), as "[t]he one family dwelling where you reside." The policy does not separately define "reside."

The Hartford argues that, because the Youngs did not "reside" at the New Hampton house at any point while the policy was in effect, including at the points when Stanley made his claim for bodily injuries and when the incident giving rise to that claim allegedly occurred, the house was not an "insured

4

location."  This, the Hartford explains, excludes the claim, which arises out of those premises, from the policy's liability coverage.  The Youngs do not question any step of this analysis aside from the assertion that they did not "reside" at the premises during the relevant time (which they agree was either at the time of Stanley's accident or at the time when he made his claim against them).

"The interpretation of insurance policy language is a question of law for this court to decide" and, in deciding it, the court must "look to the plain and ordinary meaning of the policy's words in context" and "construe the terms of the policy as would a reasonable person in the position of the insured based on more than a casual reading of the policy as a whole."  Bates v. Phenix Mut. Fire Ins. Co., 156 N.H. 719, 722 (2008) (quotation marks omitted).  As the Youngs themselves point out, the New Hampshire Supreme Court has "considered the meaning of the term 'resident' in the insurance context on multiple occasions," and, "[i]n such decisions, ha[s] defined residence as . . . 'the place where an individual physically dwells, while regarding it as his principal place of abode.'"  Belanger v. MMG Ins. Co., 153 N.H. 584, 587 (2006) (quoting Concord Grp. Ins. Cos. v. Sleeper, 135 N.H. 67, 70 (1991)).  This "definition of 'residence' considers two factors that must occur simultaneously:  (1) the person must

physically dwell at the claimed residence; and (2) the person must regard the claimed residence as his principal place of abode." Id.

Based on this definition, which the Youngs accept as controlling, and their unqualified stipulation that they "did not reside at the Premises during the tenancy of Stanley," it is exceedingly difficult to understand their position that they did in fact "reside" at the premises at the relevant time (Stanley's tenancy lasted for the whole life of the insurance policy and beyond). They did not "physically dwell" at the premises during that time; instead, as they expressly stipulate, they then "resided in Wisconsin."

While the Youngs say in their summary judgment memorandum that "until their North Hampton, New Hampshire house sold, they intended to return," that statement is not included in the joint stipulation, and is otherwise unsupported). It makes no difference anyway, at least so far as the court can understand it. What the Youngs seem to be saying is that, if the house remained unsold for some period of time--a period they have not attempted to define--they would have returned. Yet they do not explain how this sort of contingency plan amounts to "physically dwelling" in a house where they admittedly did not reside.

As the Hartford notes, the decision by a federal court of appeals in Gardner v. State Farm & Fire Casualty Co., 544 F.3d 553 (3d Cir. 2008), is right on point here.  The homeowners' policy there, just like the one here, provided no liability coverage for claims arising out of premises that were not "the residence premises," defined as "where you reside."  Id. at 560.  Relying on this exclusion, the insurer denied coverage for a claim for injuries on the premises in an accident that occurred nearly eight months after the insured had moved out and started leasing the premises, first under a six-month written lease and then on a month-to-month basis.  Id. at 556-57.  The court, applying Pennsylvania law that "an individual's residence for purposes of an insurance policy is his 'factual place of abode,' which is 'a matter of physical fact,'" ruled that the insured "simply was not residing at the [insured] Property" after moving out.  Id. at 560.

Significantly, the court rejected the argument--just like the one the Youngs make here--that the property remained the insured's residence because he harbored "the intent to return to the Property, and actually return[ed] there to live after [the tenant] left."  Id. (bracketing by the court omitted).  The court ruled that "these facts are irrelevant to a determination of [the insured's] residence" because--just like the Youngs here--"[a]s a

7

matter of physical fact he was living not at the property but, rather, was living" at the house where he had moved.  Id.  This reasoning is fully in accord with New Hampshire law requiring that a person "physically dwell" at the insured premises in order to "reside" there, see Belanger, 153 N.H. at 587, and lends strong support to the conclusion that the Youngs did not "reside" at the North Hampton house within the meaning of the policy.

The Youngs also argue that the policy is ambiguous.  As already noted, excluded from the policy's liability coverages are "'[b]odily injury' or 'property damage' arising out of or in connection with a 'business' conducted from an 'insured location' or engaged in by an 'insured.'"  But this exclusion states that it does not apply to "[t]he rental or holding for rental of an 'insured location' [o]n an occasional basis if used only as a residence."[2]  The Youngs argue that, "[b]ecause renting the entire insured location for any period of time meant that [they] would not reside at the insured location during the term of the tenancy," the policy contains "ambiguous and contradictory language regarding the right to rent."  While an internal

---

[2]The exclusion also does not apply to renting the insured location "in part for use only as a residence" or "in part, as an office, school, studio or private garage."  Neither of these exclusions applies here, as the Youngs do not dispute that they rented the entire house to Stanley and Gosling.

8

inconsistency in the provisions of an insurance policy can create an ambiguity, see Oliva v. Vt. Mut. Ins. Co., 150 N.H. 563, 565 (2004), the clauses of the policy preserving liability coverage in case the premises are rented, on the one hand, and negating that coverage if the insured does not reside on the premises, on the other, are actually consistent with each other.

As The Hartford points out, the Youngs' argument overlooks the fact that renting the entire insured location as a residence will not trigger the "business" exclusion only if done "on an occasional basis."  Renting the insured location "on an occasional basis" is consistent with maintaining "residence" there because, while "residence" requires physically dwelling in a place, it does not exclude intermittent periods of physical absence.  See Belanger, 153 N.H. at 587-88 (ruling that daughter was a "resident" of her mother's household even though she "spent a few nights" elsewhere); Concord Grp., 135 N.H. at 69-71 (recognizing that insured's grandson could be a "resident" of her household despite living elsewhere for weeks at a time).  So it is not a "practical impossibility," as the Youngs argue, to rent a home for "occasional" periods while nevertheless maintaining "residence" there.  In fact, that describes the common situation of renting out one's home while away on vacation or the like, as a number of courts have observed in finding homeowners' policies

unambiguous despite their provision for "occasional" rentals. See, e.g., Allstate Ins. Co. v. Sylvester, No. 07-360, 2008 WL 2164657, at *7 (D. Haw. May 21, 2008); State Farm Fire & Cas. Co. v. Wonnell, 533 N.E.2d 1131, 1333 (Ill. App. Ct. 1989); Hess v. Liberty Mut. Ins. Co., 458 So. 2d 71, 72 (Fla. Dist. Ct. App. 1984); cf. Villanueva v. Preferred Mut. Ins. Co., 851 N.Y.S.2d 742, 743-44 (N.Y. App. Div. 2008) (construing provision for "occasional rental" to include "one-time rental of [a] summer home for a five-month period" during ski season).

That the liability provisions of the policy extend to rentals of the premises "on an occasional basis," then, creates no ambiguity as to their coverage over rentals that last the entire life of the policy--during which the insureds admittedly "reside" elsewhere. Nor is the policy ambiguous, as the Youngs suggest, because it fails to define what "on an occasional basis" means. To the contrary, that phrase "is commonly used, readily understood, and therefore unambiguous." Oliva, 150 N.H. at 566-67 (ruling that "in the care of" was not ambiguous).

The policy provision allowing rentals of the whole premises "on an occasional basis" unambiguously excludes rentals lasting for the complete life of the policy, as was the case here.[3]

---

[3]Of course, the phrase "on an occasional basis" could be ambiguous as applied to certain rental situations of shorter

Indeed, a number of courts have interpreted similar (if not identical) policy language as unambiguously excluding rentals of a like nature.  See, e.g., Gardner, 544 F.3d at 559-60 (rental for 11 months); Allstate, 2008 WL 2164657, at *6-*7 (renting at least part of property every night for a year, on average, while not living there); Citizens Prop. Ins. Corp. v. Wise, 926 So.2d 403, 204 (Fla. Dist. Ct. App. 2006) (two-year rental as part of effort to sell); Sicard v. Mass. Prop. Ins. Underwriting Ass'n, 864 N.E.2d 1259 (table), 2007 WL 1175752, at *3 (Mass. App. Ct. 2007) (rental for entire policy period); State Farm Fire & Cas. Co v. Piazza, 131 P.3d 337, 338 (Wash. Ct. App. 2006) ("long term rental arrangements and total absence of the homeowner for over two years").  The Youngs provide no authority to the contrary.

In sum, the Youngs' insurance policy with The Hartford was, as they acknowledge, a homeowners' policy.  It should come as no surprise, then, that its liability coverages do not reach beyond the Youngs' "home," i.e., the place where they reside.  In this sense--which is the only relevant one--the Youngs' North Hampton house was not their "home" at any time during the life of their

---

duration, see Villanueva, 851 N.Y.S.2d at 743-44, but the fact "that terms of a policy of insurance may be construed as ambiguous when applied to one set of facts does not make them ambiguous as to other facts which come directly within the purview of such terms."  2 Lee R. Russ, Couch on Insurance § 21:14 (3d ed. 2008 & 2011 supp.).  That is the case here.

homeowners' policy.  So the policy does not provide liability coverage against Stanley's claim as a matter of law.  Thus, The Hartford's motion for summary judgment[4] is GRANTED, the Youngs' cross-motion for summary judgment[5] is DENIED, and the clerk shall enter judgment accordingly and close the case.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  March 16, 2012

cc:  R. Peter Taylor, Esq.
     Harvey Weiner, Esq.
     Robert A. McCall, Esq.

---

[4]Document no. 14.

[5]Document no. 20.